# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-2375

_____

Lower Brule Sioux Tribe, a federally recognized Indian tribe

*Plaintiff - Appellant*

v.

United States Department of Interior; United States Bureau of Indian Affairs; Krissanne Stevens, or her successor, Awarding Official for the Bureau of Indian Affairs Great Plains Region; United States of America; Doug Burgum, Secretary, United States Department of the Interior; Bryan Mercier, Acting Assistant Secretary for Indian Affairs; Stephanie Conduff, Acting Director of the Bureau of Indian Affairs

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of South Dakota - Central

_____

Submitted: May 14, 2026
Filed: July 9, 2026

_____

Before LAVENSKI R. SMITH, BENTON, and STRAS, Circuit Judges.

_____

BENTON, Circuit Judge.

The Lower Brule Sioux Tribe contracts with the federal government under the Tribally Controlled Schools Act (TCSA) to fund tribal schools. Under the Indian

Self-Determination and Education Assistance Act (ISDEAA), the Tribe must submit a yearly audit of its expenditures. If any costs are disallowed, the United States Department of the Interior seeks reimbursement.

From 2012 to 2019, the Tribe used some of the TCSA money to fund tribal operations that were unrelated to tribal schools. This created an "unearned revenue deficit." In 2019, the government issued a report claiming the Tribe owed over $3 million in disallowed costs. The Tribe did not object or appeal. The government began to recover the deficit by offsetting other funds the Tribe would have received.

Challenging the offsets, the Tribe eventually sued the Department of Interior; United States Bureau of Indian Affairs (BIA); and several officials in the Department and BIA. The defendants moved to dismiss for lack of subject matter jurisdiction because the Tribe did not exhaust its claims through the administrative process. The district court[1] dismissed the claims as untimely but allowed the Tribe to amend its complaint to assert one claim for overcollection. The government moved for summary judgment on this claim, which the district court granted. The Tribe appeals both the dismissal of the original complaint and the summary judgment on the amended claim. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

The Lower Brule Sioux Tribe is responsible for providing programs and services to its members and ensuring their health, safety, and welfare. To meet these responsibilities, the Tribe contracts with the United States under the ISDEAA, 25 U.S.C. §§ 5301–10, 5321–32. "Congress enacted the ISDEAA to encourage Indian self-determination and tribal control over administration of federal programs for the benefit of Indians, by authorizing self-determination contracts between the United States, through the Secretaries of the Interior and of Health and Human Services,

---

[1]The Honorable Roberto A. Lange, Chief Judge, United States District Court for the District of South Dakota.

and Indian tribes." ***Demontiney v. United States ex rel. Dep't of Interior, BIA***, 255 F.3d 801, 806 (9th Cir. 2001).

Congress enacted the TCSA in 1988 to further tribal self-determination in Indian education. **25 U.S.C. § 2501**. The TCSA "requires the Secretary of the Interior to award grants to Indian tribes or tribal organizations to operate schools on their reservations if requested by a tribe." ***Shiprock Associated Schs., Inc. v. United States***, 934 F. Supp 2d 1311, 1313 (D.N.M. 2013). The Tribe here entered self-determination contracts under the TCSA with the federal government. The contracts funded tribal schools that otherwise would have been operated by the government.

For each fiscal year the Tribe receives or spends funds under an ISDEAA or TCSA grant, the Tribe must conduct an audit**. 25 U.S.C. §§ 2507(a)(1), 5305(f)**. The Tribe must submit a reporting package, which includes an auditor's report, to a federal clearinghouse, which assesses the quality of the audit conducted. **31 U.S.C. § 7504(a)(2)**. The government must give notice about disallowance of costs within 365 days of receiving the report. **25 U.S.C. §§ 2507(a)(8), 5325(f)**.

The BIA may designate an expenditure as a "questioned cost" if it raises a deferred revenue deficit issue. **U.S. Dep't of the Interior, BIA,** *Single Audit Report Handbook 5 IAM 2-H***,** Aug. 26, 2016, Ch. 1. (available online at https://www.bia.gov/sites/bia.gov/files/assets/public/raca/handbook/pdf/5-IAM-2H-Single-Audit-Report-HB_OIMT.pdf). The BIA issues a "Findings and Determinations Memorandum" that states "whether the audit findings have been addressed satisfactorily and whether questioned costs have been disallowed (sustained) or reinstated (allowed)." ***Id***. at p.1, F. If a questioned cost is disallowed, the Tribe receives a formal notice letter, with a copy of the Findings and Determinations. ***Id***. at p. 3, 3(b).

The TCSA incorporates provisions of the ISDEAA about audit and grant disputes. *See* **25 U.S.C. § 2507**. The ISDEAA in turn incorporates the Contracts Dispute Act (CDA) to govern cost disallowance disputes. **25 U.S.C. § 2507(e)**,

*incorporating* **25 U.S.C. § 5331**).  Both the ISDEAA and the CDA waive sovereign immunity for contract claims and disputes arising between Indian tribes and federal agencies.  *See* **25 U.S.C. § 5331(a)**, **41 U.S.C. § 7102**.

The ISDEAA creates a mandatory administrative exhaustion scheme for claims arising under TCSA grants.  **25 U.S.C. § 5331(a) and (d)**.  The ISDEAA grants federal district courts original jurisdiction "over any civil action or claim against the appropriate Secretary arising under this chapter and, subject to the provisions of subsection (d) of this section and concurrent with the United States Court of Claims, over any civil action or claim against the Secretary for money damages arising under contracts authorized by this chapter."  **25 U.S.C. § 5331(a)**.

Under the mandatory administrative exhaustion scheme, "each claim by a contractor against the federal government relating to a contract shall be submitted to the contracting officer for a decision."  **41 U.S.C. § 7103(a)**.  "[T]he contracting officer's decision on a claim is final and conclusive and is not subject to review by any forum, tribunal or Federal Government agency, unless an appeal or action is timely commenced as authorized by [the CDA]."  **41 U.S.C. § 7103(g)**.  The ISDEAA contractor, or TCSA grant recipient, has the option to appeal a contracting officer's decision to (1) the Civilian Board of Contract Appeals (within 90 days of the decision), (2) the United States Court of Federal Claims (within 12 months of a decision), or (3) a federal district court (within 12 months of a decision).  **41 U.S.C. § 7104(a), (b)**; **25 U.S.C. § 5331 (a), (d)**.

From FY 2012 to FY 2015, the Tribe demonstrated to the BIA that its deferred revenues were fully collateralized by the value of other tribal assets, including cash, so there was no risk that the revenue deficits would not be replenished.  Accepting the Tribe's position, the BIA did not issue a bill of collection for the Tribe's unearned revenue deficits for Fiscal Years 2012 through 2015.

On February 22, 2018, the BIA sent its FY 2016 Findings & Determinations Report to the Chairman of the Tribe, which was received on March 5.  The cover

letter told the Tribe of its right to appeal, as set forth in the ISDEAA and CDA, to the Civilian Board of Contract Appeals (CBCA) within 90 days of its receipt of the report, or with the U.S. Court of Federal Claims within 12 months of the date of receipt. The letter did *not* expressly mention the Tribe's right to appeal to a federal district court within 12 months of receipt of the report. The letter also identified a self-determination specialist the Tribe could contact for questions.

In its FY 2016 Report, the BIA found that the Tribe used $6,122,556 in TCSA deferred revenue as short-term borrowing to fund other tribal programs. The Tribe did not dispute this, stating it would "strive to maintain the funds for federal programs in the restrictive savings account and transfer as needed to cover expenditures" in the future. The BIA issued a bill of collection for this amount, but later suspended collection after the Tribe sent additional information. The BIA decided to add the remaining debt the Tribe owed from the FY 2016 Report to any bill of collection issued for the BIA's Findings & Determinations for FY 2017. The Tribe's deadlines to appeal were June 3, 2018 (CBCA) and March 5, 2019 (federal court and Court of Federal Claims). The Tribe, however, did not appeal the FY 2016 Report until filing this case on October 8, 2021.

On March 20, 2019, the BIA issued its FY 2017 Findings and Determinations. The FY 2017 Report found questionable costs in the amount of $3,679,223 because the Tribe "used forward funded grant monies to fund other programs and general fund activities" and "could not provide any documentation of cash on hand." The FY 2017 Report was sent to the Chairman of the Tribe and received in March 2019. The letter with the FY 2017 Report noted the Tribe had the "right to dispute any information contained in the Awarding Official's final decision" by appealing to the (1) CBCA within 90 days of receipt or (2) the Court of Federal Claims within 12 months of receipt. Even assuming the letter was received on the last day of March 2019, the respective appeal dates ended on July 1, 2019, for appeal to the CBCA, and March 31, 2020, for appeal to the Court of Federal Claims.

The Tribe did not appeal the FY 2017 Report until filing this case on October 8, 2021. Sometime after receiving the FY 2017 Report, the Tribal Comptroller had responded to the BIA: "There is no disagreement with this finding. The Tribe's management is working towards rectifying the continued overspending of funds that result in the deficient fund balances. Management will strive to maintain the funds for federal programs in the restricted savings account and transfer as needed to cover expenditures." On June 10, 2020, the BIA issued a Bill of Collection to the Tribe for the FY 2017 Report for $3,679,223. On December 9, it referred the bill for collection. The Department of Treasury conducted about 47 offsets against monies owed to the Tribe, collecting $3,107,643.70 against the FY 2017 Report. The unpaid balance thus is $1,013,873.36. (No interest or fees are accruing because the current litigation has suspended the debt.)

On November 5, 2019, the BIA sent its FY 2018 Report to the Tribe's new chairman, which was received on November 8. As before, the cover letter explained the Tribe's appellate rights to dispute the FY 2018 Report and referenced the self-determination specialist. For the FY 2018 Report, the BIA issued a bill of collection for $3,552,860. The Tribe did not appeal the FY 2018 Report until filing this case on October 8, 2021. The BIA later determined these questioned costs duplicated the FY 2017 Report and cancelled the debt for FY 2018.

On August 20, 2021, the BIA sent the FY 2019 Report to the Chairman. Citing overspending of its general fund, the FY 2019 Report found that the Tribe had an unearned revenue deficit of $4,800,577 for FY 2019. The Tribe filed an administrative appeal with the CBCA challenging the FY 2019 Report, which is currently pending.

The Tribe sued the government on October 8, 2021, seeking to enjoin collection of the Tribe's alleged debts for FY 2016 and FY 2017 and declaring the government's actions to be arbitrary, capricious and contrary to law. The government moved to dismiss for lack of subject matter jurisdiction, arguing that the Tribe did not exhaust its ISDEAA or TCSA claims through the CDA administrative

process. The district court dismissed all claims as untimely under 25 U.S.C. § 2507(e) because the Tribe did not sue within twelve months after receiving the FY 2016 – FY 2018 Reports. The district court permitted the Tribe to amend its complaint to assert one overcollection claim from the FY 2017 Report. The government moved for summary judgment on that claim. The district court granted the motion, finding no basis in law or fact for the Tribe's arguments that its "prior period adjustments" reduced the FY 2017 deferred revenue balance, and that the government was required to recalculate the principal balance of the FY 2017 debt when collections commenced. The Tribe appeals the district court's dismissals and grant of summary judgment.

## II.

This court reviews de novo the existence of subject matter jurisdiction. *ABF Freight Sys., Inc. v. Int'l Bhd. Of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011). Because the district court used the Rule 12(b)(6) standard for a facial attack, this court will as well. *See BP Chemicals Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 680 (8th Cir. 2002) (The district court's method to resolve a 12(b)(1) motion – whether as a facial or factual attack – obliges this court to the same approach.) Under the 12(b)(6) standard, the court must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law," and determine whether the plaintiff's alleged facts "affirmatively and plausibly suggest" that jurisdiction exists. *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007).

The ISDEAA waives sovereign immunity for a civil action or claim arising under the CDA. *See* **25 U.S.C. § 5331(a)**. The ISDEAA expressly provides that the CDA applies to self-determination contracts, including all claims about self-determination contracts and TCSA grants where a party seeks monetary damages. *See* **25 U.S.C. §§ 5331(d), 2507**. "The CDA is a statute waiving sovereign immunity." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1329 (Fed. Cir. 2010). "A waiver of sovereign immunity must be strictly construed in favor of the sovereign." *Id.*, *quoting Orff v. United States*, 545 U.S. 596, 601–02

(2005). Courts enforce "the strict limits of the CDA as jurisdictional prerequisites to any appeal." *Id.*, *quoting* **England v. Swanson**, 353 F.3d 1375, 1379 (Fed. Cir. 2004). Under the CDA, a tribal grant recipient must sue in federal court about a dispute like this one within 12 months of receiving the government's final decision. **25 U.S.C. §§ 2507(e)**, **5331(a)**; **41 U.S.C. §§ 7103(g)**, **7104**.

The FY 2016, FY 2017 and FY 2018 Reports were labeled final decisions by a BIA-awarding official, triggering the Tribe's right to appeal. **41 U.S.C. § 7104**. Each Report stated the awarding official's determination of questioned costs and included a letter advising the Tribe of its appeal rights, which was acknowledged by the Tribe. Yet the Tribe did not appeal until filing this case in October of 2021, well past any deadline to appeal.

"Exhaustion under the CDA is a jurisdictional requirement." **Pueblo of Zuni v. United States**, 467 F. Supp. 2d 1099, 1107 (D.N.M. 2006); *see also* **Bowman Const. Co. v. United States**, 154 Fed. Cl. 127, 137 (Fed. Cl. 2021) (finding Plaintiff's appeal time-barred when outside the one-year timeframe in the CDA); **Balbach v. United States**, 119 Fed. Cl. 681, 684 (Fed. Cl. 2015) (dismissing claim outside the CDA's one-year statute of limitations). Once the statutory period to appeal expired, the BIA's determinations became final and binding. The Tribe's failure to timely appeal deprived the district court of subject matter jurisdiction to review or disturb those final Findings and Determinations. **41 U.S.C. § 7103(g)**.

The Tribe argues the district court erred in dismissing the claims in its original complaint because they are not time-barred. The Tribe believes that the BIA's decision letters disallowing questioned costs for FY 2016, FY 2017, and FY 2018 were defective because the BIA did not properly advise the Tribe of its rights. True, the cover letters to the FY 2016 – FY 2018 Reports did not notify the Tribe of its right to appeal to a federal district court within twelve months of receipt. The Tribe believes this makes the notice defective and suspends the running of the limitations period, citing *J-way S., Inc. v. United States*, 516 F. Supp. 3d 84, 90 (D. Mass. 2021). Unfortunately, the Tribe did not raise this argument until this appeal. The Tribe

never argued before the district court that the cover letters were defective, nor did it challenge their content, sufficiency or legal adequacy in opposing the government's motions to dismiss, or in its motion for summary judgment.

Typically, courts "will not consider an argument raised for the first time on appeal." *United States v. Hirani*, 824 F.3d 741, 751 (8th Cir. 2016). There are limited exceptions to this rule. A newly raised argument may be considered only where it presents a purely legal issue requiring no additional factual development, or where failure to consider it would result in manifest injustice. *Id.* Neither exception applies here. The alleged defects in the cover letters are not a purely legal issue. This issue depends on factual questions including the content of the letters, their context, the information then available to the Tribe, and how a reasonable recipient would have understood them. Additionally, the Tribe cannot show manifest injustice. The Tribe had ample opportunity to raise any challenge to the cover letters in the district court yet chose not to do so. *Id.* Having failed to raise the issue with the district court, the Tribe may not do so now.

The Tribe also briefly argues that the BIA's decision disallowing costs in FY 2017 did not advise it of the sanctions imposed. Although the notice informed it of payment restrictions, the Tribe states the notice did not state the BIA's intent to issue a bill of collection. The Tribe claims it relied to its detriment on this alleged defect. It does not, however, explain how this alleged detrimental reliance salvages its claim. The district court rejected this argument, noting the Tribe cited no authority. On appeal, the Tribe again fails to cite any authority, providing no basis to revisit the district court's ruling.

In one sentence of its brief, the Tribe concludes that the BIA's reconsideration of the FY 2016 Report suspended the finality of its decision. This statement again is without any legal analysis or authority, and the issue was not discussed by the district court. The Tribe does not explain how a reconsideration would suspend the finality of BIA's decision. This court will assume the Tribe is referring to the BIA's suspension of its collection efforts after receiving additional information from the

Tribe. True, the BIA decided to add the remaining debt the Tribe allegedly owed from the FY 2016 Report to any bill of collection issued for FY 2017. Suspending its collections until the next fiscal year did not suspend the finality of its decision indefinitely. The Tribe did not appeal the FY 2016 Report until filing this case in October 2021, well past the filing deadline for appealing either the FY 2016 or the FY 2017 Reports.

The Tribe also argues that its claims are meritorious because the revenue deficits should not have been disallowed. It states that the deficits were caused by delays in the Tribe's receipt of ISDEAA and other federal funds. When the Tribe received the delayed ISDEAA and other federal funds, it replenished the TCSA deferred revenue and spent that revenue on allowable program expenses. The Tribe adds that the deferred revenues were fully collateralized by other tribal assets, including cash, to ensure protection of the funds as required by law.

From FY 2012 to FY 2015, the Tribe needed to advance and then replenish TCSA funds due to delays in the receipt of other federal funding. The BIA, aware of this, accepted the Tribe's financial statements that demonstrated the deferred revenue was collateralized by the Tribe's assets. The BIA did not issue a bill of collection for those years. However, after the FY 2016 Report, it did seek to collect the Tribe's deferred revenue deficits, based on an internal BIA memo opining that the Tribe's capital assets could not be considered as collateral for any deferred revenue deficit. Instead, according to the memo, deferred revenue must be maintained in cash or short-term investments. This memo essentially ended the Tribe's prior practice of using capital assets to secure its debt.

The Tribe counters that it did not receive notice of this memo until April 14, 2021, which led to continued deferred revenue deficits. However, this court agrees with the district court that the deadline to file an action under ISDEAA and CDA is not related to the date that an internal memo is disclosed. Instead, the deadline to file is fixed by the date of the government's final decision. The Tribe failed to appeal

the final decision, which became final and fully collectible. The district court correctly concluded that it lacked subject matter jurisdiction over the Tribe's claim.

Finally, the Tribe asserts that the district court erred by dismissing the Tribe's claim that the government failed to provide the remedial and technical assistance mandated in the ISDEAA and TCSA, under 25 U.S.C. § 2505 and 2 C.F.R. § 200. Disagreeing with the district court, the Tribe believes it was injured by the BIA's failure to provide such assistance.

Under 25 U.S.C. § 2505(c)(3), the "Secretary shall provide technical assistance to enable the school and governing body to carry out such remedial actions." Under 25 U.S.C. § 5322(d) and (e), the Secretary of the Interior must— subject to the availability of appropriations—provide technical assistance during the contract formation process, including to develop new ISDEAA contracts, to facilitate the assumption of government-administered programs, and to modify contract proposals that were previously declined. *See* **25 U.S.C. § 5322(d), (e)**; **25 C.F.R. § 900.7** (initial contract proposals); **25 C.F.R. §§ 900.28, 900.30** (technical assistance to avoid declination of a contract proposal); **25 C.F.R. § 900.248** (assistance at the reassumption stage). *See also **Northern Arapaho Tribe v. LaCounte***, 2017 WL 2728408 at *6 (D. Mont. June 23, 2017) (applying 25 C.F.R. § 900.30 in the pre-award context). But Congress has not required that the Secretary provide technical assistance after a contract or grant is awarded, including in post-contract disputes by ISDEAA contractors or TSCA grantees. With only a conclusory statement that the district court erred in its ruling on the technical assistance claim, the Tribe provides no basis to reverse. The Tribe also fails to demonstrate injury from the alleged lack of technical assistance. Regardless, the Tribe failed to timely pursue the exclusive remedial process available under the ISDEAA and the CDA, depriving the district court of subject matter jurisdiction. The district court did not err in dismissing the Tribe's original complaint.

III.

The Tribe appeals the district court's entry of summary judgment on its overcollection claim. This court reviews de novo a grant of summary judgment. *Lager v. Chicago Northwestern Transp. Co.*, 122 F.3d 523, 524 (8th Cir. 1997). Summary judgment is appropriate if the evidence, viewed most favorably to the nonmoving party, presents no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. **Fed. R. Civ. P. 56**; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The Tribe argues that its deferred revenue deficit decreased substantially between the submission of the FY 2017 and FY 2020 audits due to the Tribe replenishing the TCSA account. Additionally, the Tribe states that its audit for FY 2020 further changed the calculation of the Tribe's deferred revenue deficit from FY 2017 by applying a prior period adjustment to the calculations in the 2010 through 2019 audits. It claims this prior period adjustment was approved by the BIA's self-determination specialist who reviewed the audit and by the awarding official who signed the FY 2020 Report. The Tribe alleges that the BIA has collected over $2 million more than the actual amount of its deferred revenue deficit, which it claims is unjust and inequitable. The Tribe asserts it has provided sufficient evidence to justify amendment of the contracting officer's decisions, and thus the refusal to amend them was arbitrary, capricious, and contrary to law.

The Tribe has offered no evidence or legal analysis in its appeal to support its conclusory statements. The Tribe's financial records and applicable law establish that it owes $1,013,873.36 on its FY 2017 debt. The Tribe does not dispute the deferred revenue deficiency. As discussed, cost allowance disputes under the TCA are governed by provisions of the ISDEAA, which in turn incorporates the CDA. **25 U.S.C. § 2507(e)** and **25 C.F.R § 44.110(a)(4), (b)**. Under the CDA, agency decisions regarding contracts are "final and conclusive" unless timely appealed. *See* **41 U.S.C. § 7103(g)**.

-12-

As discussed, the Tribe did not timely appeal the FY 2017 Report. Indeed, the Tribal Comptroller agreed with the finding, stating the Tribe was committed to "rectifying the continued overspending of funds that result in the deficient fund balances." After the appeals deadline lapsed, the FY 2017 Report became a final decision, in the amount of $3,679,223. The government instituted collections, and the current balance on the FY 2017 debt is $1,013,873.36.

The Tribe justifies its overcollection claim by arguing it should be able to adjust FY 2017 debt on a running basis, using "prior period adjustments" based on deferred revenue balances reported in subsequent years' financial statements. This is untenable. The CDA does not allow the Tribe to unilaterally change the final decision of the BIA, including the amount owed. *See **United States v. Lodge Constr., Inc.***, 2018 WL 11456197 at *2 (M.D. Fla. Apr. 11, 2018) (denying motion to stay a collection action by the United States because the contractor could not challenge the merits of a contracting officer's decision in any forum where the contractor did not appeal the decision.); ***Bowman***, 154 Fed. Cl. at 137 (finding plaintiff's appeal from the final decision of a contracting official to be time-barred when outside the one-year timeframe); ***Balbach***, 119 Fed. Cl. at 684 (dismissing claim against a contracting officer's final decision outside the CDA's one-year statute of limitations).

The Tribe's argument would negate the statutorily mandated audit review process. There would be no finality, with a never-ending cycle requiring the Department to revisit prior years' findings and disallowed costs. It would allow a Tribe to continuously adjust its deferred revenue balances in the subsequent years' audits and nullify any Findings and Determinations.

The Tribe's overcollection allegation fails to properly challenge the government's financial records. The Tribe's calculations of "prior period adjustments" cannot overcome the final decision. This court agrees with the district court that the Tribe's opportunity to challenge the FY 2017 Report has passed,

"erecting a sovereign immunity bar to contesting the amount now."  The district court properly granted the government's motion for summary judgment.

* * * * * *

The judgment is affirmed.

_____